**In re WELLA A.G.**

**Appeal No. 85-2397.**

United States Court of Appeals,
Federal Circuit.

April 1, 1986.

Bruce E. Lilling, Lilling & Greenspan, White Plains, N.Y., argued, for appellant.

Helen R. Wendel, Trademark Examining Atty., U.S. Patent and Trademark Office, Arlington, Va., argued, for appellee. With her on brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Before FRIEDMAN, DAVIS and NIES, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from the decision of the United States Patent and Trademark Office's Trademark Trial and Appeal Board (Board) refusing registration of a trade-mark of a foreign corporation, on the ground that the mark so resembles marks registered by an American subsidiary of the foreign corporation that confusion between the American subsidiary's marks and the mark sought to be registered is likely. The Board held that in these circumstances section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) (1982), discussed below, bars registration. We hold that the Board misinterpreted section 2(d). We therefore vacate and remand for further proceedings.

I

The appellant Wella A.G., a German corporation, sought registration of the mark WELLASTRATE for use on hair straightening products. The examiner refused registration in light of four marks registered by the Wella Corporation (Wella U.S.), an American subsidiary of the German corporation, which also covered various hair care products: WELLATONE, WELLA STREAK, WELLASOL, and WELLA plus a design.

During the proceedings before the examiner, Wella A.G. submitted a declaration by the executive vice president of Wella U.S., who was also a member of the Board of Directors of Wella A.G., which stated that Wella A.G. owns "substantially all of the outstanding stock of [Wella U.S.], and thus controls the activities and operations of [Wella U.S.], including the selection, adoption and use of trademarks ...; [Wella U.S.] perpetually consents to the use and registration by Wella A.G. of the mark WELLASTRATE...." Wella A.G. further stated that it, and not Wella U.S., actually had used the mark WELLASTRATE, so that Wella U.S. could not seek registration of that mark.

The examiner denied registration. She relied upon section 2(d), which bars registration of a mark that

so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to

the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

The examiner relied upon a line of Board decisions holding that under section 2(d) the term "another" means "different separate legal entit[ies] regardless of any relationship between the parties." The examiner further stated that there was "no evidence submitted that the appellant and the registrant can and will remain clear of each other's marketing and trade channels, so that there is no real likelihood of confusion."

The Board affirmed the denial of registration. The Board rejected Wella A.G.'s argument that because it and Wella U.S. are "related companies" under the definition of that term in 15 U.S.C. § 1127 (1982), section 5 of the Trademark Act, 15 U.S.C. § 1055 (1982), made section 2(d) inapplicable to this case. Section 5 provides that where "a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the ... applicant for registration...." The argument apparently was that since Wella U.S.'s use of its four registered marks inured to the benefit of its related company Wella A.G., the use of those marks by Wella U.S. was not use "by another." The Board held that

[s]ection 5 provides the basis upon which one can claim the benefit of another's use and therefore obtain a registration based on the use by the other related entity. In this regard, we are of the view that nothing precluded Wella A.G. from applying for registration of the cited "WELLA" trademarks based on use by its related company, [Wella U.S.]. Similarly, there is nothing to preclude Wella A.G. from obtaining ownership of the cited registrations by assignment from the subsidiary company. However, nothing in the Act requires us to ignore the requirements of Section 2(d) and there is no evidence that, by permitting claims based on related company use, the framers of the Trademark Act intended

to alter the well established principles concerning likelihood of confusion.

The Board followed its prior cases, which, it said, held that registration may not "be issued for the same or similar marks for the same or closely related goods to two separate legal entities, notwithstanding that they may be related companies within the meaning of Section 5 of the Act." The Board concluded:

Section 2(d) of the Act unequivocally bars registration of a mark which so resembles a mark registered or used "by another" as to be likely to cause confusion. It is clear that the owner of the cited registration is a corporation organized under the laws of the State of New York and is an entity separate and distinct from applicant corporation. As we have always considered a subsidiary corporation to be "another" separate legal entity in relation to its parent and as we are not persuaded by applicant that we should now hold to the contrary, we must affirm the refusal of registration for the reasons set forth in the *Citibank* case, supra.

## II

As noted, the Board several times has held that if a separate legal entity seeks registration of a mark that is confusingly similar to a mark used or registered by a related but separate corporation, the latter use or registration is "by another," and that section 2(d) bars registration of the mark. The Board apparently applies this rule automatically without regard to the relationship between the related companies, the extent to which the controlling company supervises and manages the controlled company and its use of trademarks, and the public perception of the source of the goods to which the marks are applied.

In its appeal brief to the Board in this case, Wella A.G. stated:

As pointed out in the response to final rejection filed May 2, 1984, as far as the public is concerned, there is only one "Wella company." In other words, the image given to customers throughout the

world is that there is a single Wella entity. Thus, even though there may be technically separate companies for purposes of manufacturing and distributing products in a particular country, the image given to the public is that there is a single Wella company and it is probably true that most customers are not even aware of the fact that there are separate companies.... Therefore, by definition, there will be no likelihood of confusion, because consumers will be associating WELLASTRATE with Wella. It is of no consequence whether the mark is associated with [Wella U.S.], the subsidiary, or Wella A.G., the parent.

In its opinion the Board referred to this contention, but apparently deemed it irrelevant because of the Board's settled view that a separate legal entity always is "another" under section 2(d) which, under the Board's view of that section, bars registration.

We conclude that the Board has taken an unduly, unnecessarily, and improperly narrow view of section 2(d).

■ That section bars registration of a mark that so resembles the mark registered or used by another "as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive ...." Where the applicant is a related company, the statute requires a thorough inquiry into whether, considering all the circumstances, use of the mark by the applicant is likely to confuse the public about the source of the applicant's goods because of the resemblance of the applicant's mark to the mark of the other company. It is not enough to state, as the Board did, that Wella A.G. has not "disput[ed] the similarity of the respective marks and the close relationship of the respective goods in connection with which the marks are used...."

■ The question is whether, despite the similarity of the marks and the goods on which they are used, the public is likely to be confused about the source of the hair straightening products carrying the trademark "WELLASTRATE." In other words, is the public likely to believe that the source of that product is Wella U.S. rather than the German company or the Wella organization.

The Board never addressed that question. We think the statute required it to do so. In its brief before us, Wella A.G. states that

there will be no confusion in the marketplace, because, as far as the consuming public is concerned, there is only one Wella. The average consumer does not know and does not care that there may be separate Wella corporate entities throughout the world; the consumer is only concerned with the Wella entity which is selling hair care products worldwide. The fact that one of the Wella companies, as opposed to another Wella company, is selling the product does not make any difference. The consumer believes that he or she is purchasing a Wella product and that is what the consumer is getting, whether it be a product of Wella A.G. or a product of Wella U.S. or a product of one of the other Wella companies.... Thus, even though there may be technically separate companies for purposes of manufacturing and distributing products in a particular country, the image given to the public is that there is a single Wella company and it is probably true that most consumers are not even aware of the fact that there are separate Wella companies.

From a factual point of view, it is not possible for there to be a likelihood of confusion between the marks of Wella A.G. and Wella U.S., because they are, in essence, a single entity and the intention of the marketing campaign is to give the impression that there is but a single Wella company.

Therefore, by definition, there will be no likelihood of confusion, because consumers will be associating WELLASTRATE with Wella.

If the Wella family of marks connotes to consumers only a single source for all Wella products, namely the Wella organization, it is difficult to see how Wella A.G.'s use of

the mark "WELLASTRATE" would cause confusion as to source because of Wella U.S.'s use of other Wella marks.

Although, as noted, the Board has applied this principle in several cases, in only one of them did the Board explicate its rationale. *In re Citibank N.A.*, 225 USPQ 612 (TTAB 1985), *appeals dismissed*, Nos. 85–2154, 2155, 2156 (Fed.Cir. Apr. 18, 1985). There the Board refused to register three marks of Citibank, a wholly owned subsidiary of Citicorp, containing the letters CITI alone or in combination with certain other words, because of the mark's similarity to Citicorp's registered marks.

The evidence showed that there was a joint policy committee for the two companies "which makes all major institutional policy decisions, including those related to trademarks and service marks," that "[o]ne office of the Secretary serves both corporations and manages all trademark activities for both including development of a joint identification standards and policies manual which governs use of marks by both entities," and that "Citicorp and Citibank have executed an agreement which governs the adoption and use of the various marks with the prefix "CITI" which are used by one company or the other." *In re Citibank*, *supra* at 614. Citibank argued that under the circumstances the CITI marks defined a single source even though two different legal entities owned them. In response, the Board ruled that

> [a]pplicant's position is self-contradictory. On the one hand the law requires that applicant and registrant must be separate legal entities, and applicant argues that its agreement with registrant and the manner in which applicant and registrant operate ensure that there is no likelihood of confusion as to the source of the various services offered under these similar marks. On the other hand applicant argues ... that "there is functionally only one source—the Citibank/Citicorp institution." Applicant and registrant have not acted to effec-

tively eliminate the likelihood of confusion.

*Id.*

The Board's reasoning is unconvincing because it assumes the critical issue in the inquiry that is required under section 2(d). Although the Board stated that the applicant and the registrant "have not acted to effectively eliminate the likelihood of confusion," the Board made no attempt to determine whether under the circumstances there was in fact any likelihood of confusion, or to explain what that confusion would be. In view of our statutory analysis in this opinion, the Board's explication of its reasoning in *Citibank* does not justify or support the Board's theory.

The Board in the present case "affirm[ed] the refusal of registration for the reasons set forth in the *Citibank* case, supra." For the reasons we have given, we conclude that in so holding, the Board misinterpreted and misapplied section 2(d). The Board's decision in this case therefore cannot stand. We shall reverse that decision and remand the case for further proceedings consistent with this opinion.

The only issue for the Board to consider on the remand is whether, considering all the circumstances, there is a likelihood of confusion between the mark sought to be registered and the four Wella U.S. marks which under section 2(d) would warrant refusal of registration. In view of our disposition of this case, we find it unnecessary to indicate any views on the correctness of the Board's rejection of Wella A.G.'s argument, which it also pressed before us, that section 5 of the Trademark Act entitled it to registration of its WELLASTRATE mark.

The decision of the Trademark Trial and Appeal Board affirming the examiner's refusal to register the trademark "WELLASTRATE" is vacated, and the case is remanded to the Board for further proceedings in accordance with this opinion.

VACATED and REMANDED.

NIES, Circuit Judge, additional views.

I agree with the majority that the section 2(d) rejection cannot stand and that the application must be remanded for further examination. The question of likelihood of confusion where goods of a foreign corporation and goods of a related U.S. corporation are sold under the same or a confusingly similar mark is not resolvable simply on the basis that the companies are separate entities. The issue of confusion in such situations, that is, whether the public considers there to be one or two sources, has been exhaustively explored in several recent decisions in what are termed "grey market" cases. *See, Weil Ceramics & Glass, Inc. v. Dash,* 618 F.Supp. 700, 227 USPQ 737 (D.N.J.1985), and cases cited therein at 705–06, 227 USPQ at 740–41; *see also, Vivitar Corp. v. United States,* 761 F.2d 1552, 1560–65, 1750 n. 24, 25, 225 USPQ 990, 996–1000, 1003 n. 24, 25 (Fed. Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *In re Certain Alkaline Batteries (Duracell),* 225 USPQ 823 (ITC 1984). That issue was inadequately treated by the board and must be reconsidered.

There is, however, a different question, not addressed in the initial prosecution of the application, with respect to *ownership* of U.S. rights in the WELLA marks. Is Wella A.G. the owner of such rights or is its subsidiary, Wella U.S., the owner?

Under section 1 of the Lanham Act, only the *owner* of a mark is entitled to apply for registration.[1] If one who is not the owner seeks registration, the application must be denied and any registration which issues is invalid. *Smith v. Tobacco By-Products & Chemical Corp.,* 243 F.2d 188, 44 CC Pa 880, 113 USPQ 339 (1957); *see also, In re Alexander,* 114 USPQ 547, 548 (Comm'r Pats.1957); J. McCarthy, *Trademarks and Unfair Competition* §§ 16:14, 19:14 (2d ed. 1984); E. Vandenburgh, *Trademark Law and Procedure* § 10.11(b) (2d ed. 1968); 37 C.F.R. 2.33 (1985). In this case Wella A.G. avers in its application that it is the *sole* owner of rights in the WELLA marks in U.S. commerce. At the same time, the registrations of Wella U.S. evidence that Wella U.S. is the *sole* owner of such rights. If Wella A.G. is the *sole* owner of such rights, its subsidiary Wella U.S. cannot also be the *sole* owner of the *same* rights.[2] Regardless of their being related companies, only one is the owner. Whether the relationship is that of licensor/licensee or parent/subsidiary, the one entity which *controls* the nature and quality of the goods sold under the mark is the owner. *See* J. McCarthy, *supra,* § 18.14, p. 830; Trademark Manual of Examining Procedure, §§ 1201.01 et seq.

In apparent anticipation of a rejection on the ground that Wella A.G. and Wella U.S. could not both be the owner of WELLA rights in the U.S., Wella A.G. argued that under section 5 of the Act the registrations of Wella U.S. "inure to the benefit of Wella A.G." Appellant's argument confuses a number of issues. The right to register a mark and the right to use a mark are separate and distinct rights. The right to register depends on the statute. The right to use may rest on private acts and agreements.[3] The two must not be confused. *See Food Specialty Co. v. Catz American Co.,* 433 F.2d 817, 58 CC Pa 710, 167 USPQ 680 (1970); *Hammermill Paper Co. v. Gulf States Paper Corp.,* 337 F.2d 662, 52

---

**1.** 15 U.S.C. § 1051 (1982) begins:

The *owner* of a trade-mark ... may register his trade-mark under this Act ...:

(a) By filing in the Patent and Trademark Office.... [Emphasis added.]

Similarly, only the owner of the mark is entitled to maintain an existing registration. 15 U.S.C. §§ 1058(a), 1059, 37 C.F.R. §§ 2.163, 2.182; PTO forms 13, 15 and 16.

**2.** This is not an instance in which a mark is claimed to be jointly owned by two entities so that an application may be filed in the names of two joint owners. *See In re Diamond Walnut Growers, Inc.,* 204 USPQ 507 (TTAB 1979).

**3.** *A. Bourjois & Co. v. Katzel,* 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923). Too often parties fail to enter into an agreement and the court must determine from surrounding circumstances who is the owner. *E. Vanderburgh, supra,* at 252. *Manitowoc Sales & Service Corp. v. Manitowoc Crane & Shovel Sales Corp.,* 156 USPQ 26 (Ohio 1967).

CC Pa 797, 143 USPQ 237 (1964); *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 407 F.2d 881, 56 CC Pa 946, 160 USPQ 715 (1969); *Turner v. HMH Publishing Co.,* 380 F.2d 224, 154 USPQ 330 (5th Cir.), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601, 156 USPQ 720 (1967); *National Trailways Bus System v. Trailway Van Lines, Inc.,* 269 F.Supp. 352, 155 USPQ 507 (E.D.N.Y.1965). Here, we are dealing only with the right to register.

There is no provision in the statute, or in general principles of trademark law, which might support Wella A.G.'s argument that in a related company situation it is immaterial which entity is the applicant or registrant of the mark which both entities are entitled to use. Wella A.G.'s reliance on section 5 is misplaced. Nothing in section 5 confers a right to register on a non-owner. *See In re Alexander,* 114 USPQ at 548. Section 5 does provide that the *"use"* by a related company "shall inure to the benefit of the *registrant* or *applicant* for registration...." (Emphasis added.) But since a *registrant* or *applicant* for registration must be the owner, section 5 benefits only the *owner* of the mark. The definitions of "applicant" and "registrant" in section 45 [4] do not include a related company. *See Hertz Corp. v. Knickerbocker,* 206 F.Supp. 305, 306, 135 USPQ 9, 10 (S.D.N.Y.1962).

The question of who is the owner of a mark and, therefore, entitled to register is not a mere technicality. The presumptions of section 7(b) [5] are inconsistent with the concept of a non-owner being the registrant. Moreover, it is particularly important in this case to determine whether the foreign corporation or the United States corporation is the owner since certain rights are available only if the registrant is a United States company. For example, 19

U.S.C. § 1526 (1982) gives a right to bar importations upon deposit of a registration with Customs Service only to U.S. companies. *See, Vivitar Corp. v. United States, supra.*

As far as the PTO is concerned, in view of section 7, *supra* note 5, the PTO must accept the correctness of the existing title records for the WELLA registrations, which show that the WELLA marks are owned solely by Wella U.S. Wella A.G. is, therefore, not entitled to the registration it seeks until these title records reflect the ownership it now claims or the registrations are cancelled. Thus, a new rejection on the basis of sections 1 and 7 appears appropriate.

---

**4.** 15 U.S.C. § 1127 (1982) provides, in pertinent part:

> The terms "applicant" and "registrant" embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant.

**5.** 15 U.S.C. § 1057(b) (1982) reads:

A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods and services specified in the certificate, subject to any conditions and limitations stated therein.