In re WELLA A.G.

Appeal No. 88–1150.

United States Court of Appeals, Federal Circuit.

Sept. 29, 1988.

Bruce E. Lilling, Lilling and Greenspan, White Plains, N.Y., argued, for appellant.

Albin F. Drost, Associate Sol., Com'r of Patents and Trademarks, Arlington, Va., argued, for appellee. With him on the

brief, was Fred E. McKelvey, Sol., Washington, D.C.

Before FRIEDMAN, NEWMAN and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This case is before us for the second time. In the prior opinion we reversed the refusal of the Trademark Trial and Appeal Board (Board) to register a trademark because, we held, the Board's action rested upon a misinterpretation of section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d) (1982). We remanded the case to the Board for further proceedings in accordance with our opinion. *In re Wella A.G.*, 787 F.2d 1549, 229 USPQ 274 (1986).

On the remand, the Board held that section 2(d) did not bar registration, but denied registration on the new ground that the applicant for registration was not the owner of the mark. We hold that the Board did not comply with our prior order, vacate the Board's latest decision, and remand the case for further proceedings consistent with this opinion.

## I

The appellant Wella A.G., a German corporation, sought registration of the mark WELLASTRATE for use on hair straightening products. The Board, affirming the examiner, refused registration in light of four marks registered by the Wella Corporation (Wella U.S.), an American subsidiary of the German corporation, which also covered various hair care products: WELLATONE, WELLA STREAK, WELLASOL, and WELLA plus a design.

The Board relied upon section 2(d), which bars registration of a mark that "so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion." The Board followed its prior cases, which, it said, held that registration may not "be issued for the same or similar marks for the same or closely related goods to two separate legal entities, notwithstanding that they may be related companies within the meaning of Section 5 of the Act." 787 F.2d at 1550–51.

This court reversed. We held that where the applicant is a related company of an existing registrant, section 2(d)

requires a thorough inquiry into whether, considering all the circumstances, use of the mark by the applicant is likely to confuse the public about the source of the applicant's goods because of the resemblance of the applicant's mark to the mark of the other company....

The question is whether, despite the similarity of the marks and the goods on which they are used, the public is likely to be confused about the source of the hair straightening products carrying the trademark "WELLASTRATE." In other words, is the public likely to believe that the source of that product is Wella U.S. rather than the German company or the Wella organization.

787 F.2d at 1552.

The first sentence of the penultimate paragraph of our opinion stated:

The only issue for the Board to consider on the remand is whether, considering all the circumstances, there is a likelihood of confusion between the mark sought to be registered and the four Wella U.S. marks which under section 2(d) would warrant refusal of registration.

*Id.* at 1553.

The opinion concluded:

The decision of the Trademark Trial and Appeal Board affirming the examiner's refusal to register the trademark "WELLASTRATE" is vacated, and the case is remanded to the Board for further proceedings in accordance with this opinion.

*Id.*

Appended to the opinion were the "additional views" of Judge Nies, a member of the panel. She "agree[d] with the majority that the section 2(d) rejection cannot stand and that the application must be remanded for further examination. The question of likelihood of confusion where goods of a

foreign corporation and goods of a related U.S. corporation are sold under the same or a confusingly similar mark is not resolvable simply on the basis that the companies are separate entities." *Id.* at 1554. She then stated:

> There is, however, a different question, not addressed in the initial prosecution of the application, with respect to *ownership* of U.S. rights in the WELLA marks. Is Wella A.G. the owner of such rights or is its subsidiary, Wella U.S., the owner?

*Id.* (emphasis in original).

Pointing out that "[u]nder section 1 of the Lanham Act, only the *owner* of a mark is entitled to apply for registration" (*id.*, emphasis in original, footnote omitted), Judge Nies concluded:

> As far as the PTO is concerned, in view of section 7, *supra* note 5, the PTO must accept the correctness of the existing title records for the WELLA registrations, which show that the WELLA marks are owned solely by Wella U.S. Wella A.G. is, therefore, not entitled to the registration it seeks until these title records reflect the ownership it now claims or the registrations are cancelled. Thus, a new rejection on the basis of sections 1 and 7 appears appropriate.

*Id.* at 1555.

B. On remand the Board, noting both our "only issue" instruction and the "additional views" of Judge Nies, stated that it was "somewhat uncertain as to which procedural course to take." The Board concluded that

> [o]n the one hand, the Court's decision is clear that the Board must consider the Section 2(d) likelihood of confusion question in light of the Court's opinion and that this is "the only issue" for the Board to consider on remand. On the other hand, the "additional views" section, while not the Court's holding and while not a specific order to the Board, clearly indicates that, in Judge Nies's view, a rejection of applicant's application on the basis of Sections 1 and 7 of the Act appears appropriate.

In order to comply fully with the Court's directions and also to proceed in accordance with Judge Nies' "additional views," the Board hereby defers action on the Section 2(d) question and remands the application, pursuant to Trademark Rule 2.142(f)(1), for further examination. In particular, the Examining Attorney should consider a refusal to register, in accordance with Judge Nies's comments, under Sections 1 and 7 of the Trademark Act, on the ground that applicant is not the owner of the mark it seeks to register.

*In re Wella A.G.*, 230 USPQ 77, 78 (T.T.A.B. 1986).

The examining attorney refused registration "under Section 1 and 7 of the Trademark Act on the ground that applicant Wella A.G. (West Germany [sic] Corporation) is not the owner of the mark in the United States. Rather, it appears that The Wella Corporation (New York Corporation) is the owner of the mark in the United States, as evidenced by the four reference-registrations in the name of the Wella Corporation." The examining attorney forwarded the application to the Board "for further action."

The Board reversed the refusal to register under section 2(d) but affirmed the refusal to register "on the grounds that Wella A.G. does not own the mark it seeks to register." *In re Wella A.G.*, 5 USPQ2d 1359, 1362 (T.T.A.B. 1987). With respect to the section 2(d) rejection, the Board ruled that

> Wella A.G. and Wella U.S. are the same source, for purposes of determining whether Section 2(d) of the Trademark Act bars registration to Wella A.G. of the mark "WELLASTRATE." Because they constitute a single source, there can be no likelihood of confusion as to source in the contemporaneous use of "WELLASTRATE" and the four marks cited by the Examining Attorney, and the Section 2(d) refusal to register may not stand.

5 USPQ2d at 1361–62.

In holding that Wella A.G. was not the owner of the mark it sought to register, the Board reasoned:

Applicant Wella A.G. has consistently maintained in the prosecution of this appeal that Wella A.G. controls the use of all the "WELLA" trademarks, including those that have been registered by its subsidiary Wella U.S. That consistent position notwithstanding, we cannot ignore the fact that there are, on the register, four "WELLA" marks, with the attendant Section 7(b) presumptions that Wella U.S. is the U.S. owner of those registered marks. As long as those registrations exist on the records of the Patent and Trademark Office, this Office is bound to find, as a matter of law, that the "WELLA" marks, whose source is the Wella organization, are owned in the United States by Wella U.S.

To put the matter in even simpler terms, irrespective of what this ex parte record shows concerning the use and control of the various "WELLA" marks, the right to register these marks is a statutorily conferred right that may only be exercised by the owner of the mark sought to be registered. The existence of the cited registrations on the register in the name of Wella U.S. represents conclusive evidence, for the purposes of registration, that all the marks of the Wella organization are owned in the United States by Wella U.S. and not, as argued by applicant, by Wella A.G.

*Id.* at 1362 (footnote omitted).

## II

Our prior opinion explicitly and unequivocally instructed the Board that "[t]he only issue" it was to "consider on the remand" was whether there was a likelihood of confusion between the mark sought to be registered and the four Wella U.S. marks, which would warrant denial of registration under section 2(d). Despite that stricture, the Board, after ruling that registration could not be denied under section 2(d), proceeded to deny registration on the new ground that Wella A.G. was not the owner of the mark it sought to register. In denying registration on this new ground, which the Commissioner had not raised either in the earlier administrative proceedings or on the prior appeal, the Board failed to carry

out our direction that the case was remanded "for further proceedings in accordance with this opinion."

The fact that in her statement of "additional views" Judge Nies had raised the ownership issue and had concluded that "a new rejection on the basis of sections 1 and 7 appears appropriate" did not justify the Board's injection of this new issue into the proceedings. Judge Nies' "additional views" were just that: her personal opinion of the proper ground for decision of this case. The majority of the court, however, did not join in or accept those "additional views." Instead, it limited the Board's authority on remand to consideration of only the section 2(d) issue.

Indeed, the unusual nature of our limiting instruction to the Board—we did not merely reverse the Board's denial of registration but explicitly told the Board what it could consider on remand—should have led the Board to realize that the majority of the court did not view the additional issue Judge Nies had raised as something for the Board to address on remand. The Board had no basis for its attempt "to comply fully with the Court's directions" and also "to proceed in accordance with Judge Nies' 'additional views,'" since the latter course was totally inconsistent with the direction of the court that "the only issue" the Board was to consider was the section 2(d) question.

An "inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania R.R.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948), *quoted with approval in Northern Helex Co. v. United States*, 225 Ct.Cl. 194, 634 F.2d 557, 560 (Ct.Cl.1980). The rule is equally applicable to the duty of an administrative agency, such as the Board, to comply with the mandate issued by a reviewing court. *Federal Power Comm'n v. Pacific Co.*, 307 U.S. 156, 160, 59 S.Ct. 766, 768, 83 L.Ed. 1180 (1939). Once the Board determined that there was "no likelihood of confusion as to source in the contemporaneous use of 'WELLASTRATE'" and the four marks of

Wella U.S., so that "the Section 2(d) refusal to register may not stand," that should have been the end of the case. The Board then should have published the mark for opposition.

██ The Board did not deny registration on the new ground because, following our reversal of its prior decision, it independently discerned another ground for reversal. Instead, it acted solely in response to the views of Judge Nies—views which it sought to accommodate with the decision of the court that the Board was not to decide that issue. This case, therefore, is quite different from cases in which, after the court has reversed the Commissioner's denial of an application for a patent, the Commissioner again denied the application on a new ground not previously raised.

Assuming *arguendo* that the Commissioner's refusal to register a trademark can be equated with his refusal to issue a patent and that our role in judicial review of those two decisions is the same—an assumption, the correctness of which is far from clear—the present case involves the very different and unusual situation in which the court specifically directed the course of the further proceedings for the Patent and Trademark Office. Such a direction is not unique. In *Paulik v. Rizkalla*, 760 F.2d 1270, 1276, 226 USPQ 224, 228 (Fed.Cir.1985) (*en banc*), we vacated the decision of the Board in an interference proceeding and remanded the case to the Board "for new interference proceedings in accordance with this principle."

The Commissioner apparently accepted the validity of the limitation we placed upon his authority on remand, since he did not seek a rehearing to eliminate that limitation as improper. His action in this case is in sharp contrast with his action in *Parks v. Fine*, 783 F.2d 1036, 228 USPQ 677 (Fed. Cir.1986). That case involved judicial review of a decision of the Board of Patent Interferences. Following our reversal of both the Board's award of priority of invention and its refusal to resolve the interference, the Commissioner filed a brief *amicus curiae* in which he asserted that the Board had no jurisdiction to dissolve an interference and urged that our reversal of that refusal was improper. We agreed with the Commissioner and amended our decision to eliminate the reversal of the Board's refusal to dissolve the interference and limit the decision to the reversal of the award of priority.

## CONCLUSION

The Board has held that registration cannot be denied under section 2(d). We have held that the Board's new ground of refusal of registration—that Wella A.G. is not the owner of the mark—cannot stand because under our remand, the Board was not authorized to consider the related company issue, on which there was not controversy. Accordingly, the decision of the Board affirming the Examiner's refusal to register the trademark WELLASTRATE is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

ARCHER, Circuit Judge, concurring-in-result.

I concur with the majority's reversal of the denial by the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board) of registration of the mark at issue based on "lack of ownership." I do so, however, on the merits of the denial, not because the PTO was prohibited by this court's remand from denying registration on that basis.

The majority opinion holds that the Board was without authority to raise a new basis of denial of registration after the remand from this court because its opinion instructed the Board to consider only the likelihood of confusion issue. Here, the Board considered the remand issue as instructed by the court and resolved it in favor of appellant. The present appeal, therefore, does not in any way involve that issue. I view the majority opinion as wrong in holding that the PTO cannot, upon disposing of the remand issue, consider other grounds for denying registration.

In *In re Clemens*, 622 F.2d 1029, 1039, 206 USPQ 289, 299 (CCPA 1980), which involved a patent appeal from the PTO, our predecessor court (whose opinions bind us) stated:

Under the statute, 35 U.S.C. 144, we are required to review the board's entire decision on ... the record before us. Further proceedings in the PTO are matters for PTO election, the statute merely requiring that any such proceedings be governed by this court's decision.... The PTO is free to make another rejection, after this decision, should it develop facts that would render such a rejection justifiable.... It is the Patent Office which grants patents, not this court.

*Accord In re Fisher*, 448 F.2d 1406, 1407, 171 USPQ 292, 293, (CCPA 1971) ("As we have often pointed out, we pass only on the rejections actually made and do not decree the issuance of patents."); *In re Ruschig*, 379 F.2d 990, 993, 154 USPQ 118, 121 (CCPA 1967) ("Appellants insinuate that ... we found all the claims ... patentable [and returned the application] to the Patent Office for issuance. We did neither of these things. We passed on a rejection on prior art, affirmed by the board, found it error, and reversed the board decision. Nothing more. Under 35 U.S.C. 144 the only effect of our decision was to govern further proceedings in the case.")

Although these opinions involve patent appeals, the statutes pertaining to both patent and trademark appeals from the PTO are virtually identical. They both prescribe

The United States Court of Appeals for the Federal Circuit shall review the decision from which an appeal is taken on the record before the Patent and Trademark Office. Upon its determination the court shall issue to the Commissioner its mandate and opinion, which shall be entered of record in the Patent and Trademark Office and shall govern the further proceedings in the case.

35 U.S.C. § 144 (Supp.1984); *see also* 15 U.S.C. § 1071(a)(4) (Supp.1984).* Hence, I see no reason to differentiate trademark

and patent proceedings on the issue now before us, i.e., the governance of further proceedings in the PTO on remand from this court.

The notion that only the PTO has the authority to issue a patent (or register a federal trademark) is consistent with the statutory mandates upon the PTO to issue patents and register trademarks only when they meet the strict requirements of the law. *See* 35 U.S.C. § 102 (1982) ("A person shall be entitled to a patent *unless* ...."); 35 U.S.C. § 103 (1982 & Supp.1984) ("A patent may *not* be obtained...."); 15 U.S.C. § 1052 (1982) ("No trademark ... shall be refused registration ... *unless* ....") (emphasis added). To limit, as would the majority, the power of the PTO to invoke new grounds for denying the issuance of a patent or the registration of a trademark may, in the appropriate factual setting, be tantamount to ordering the PTO to disregard its statutory duty.

The majority suggests that because the PTO denied the registration on a ground suggested by Judge Nies rather than on one "it independently discerned," this case is rendered "quite different" from cases where the PTO enters a new ground of denial following a reversal by this court. The majority gives no reason to support its view that an "independently discerned" ground of rejection is any more meritorious than one suggested by a member of this court. In my view it is the merits of the new ground for rejection that are important, not its source.

In any event, our prior order required the Board to determine whether the public is likely to believe that the source of the WELLASTRATE product is WELLA U.S. rather than WELLA A.G. Notwithstanding the opinion of the majority, the Board *did* comply with our order when it answered the remanded question in the negative. The Board found no such likelihood because WELLA A.G. and WELLA U.S. "constitute a single source". Having so concluded, the Board rightly reversed the Section 2(d) refusal to register as improper.

---

* The only difference between these two statutory provisions is that in the latter the phrase "to the commissioner" in the second sentence appears in a different location in the same sentence.

Thus, this case is, for all practical purposes, exactly the case that the majority seeks to distinguish, i.e. a reversal by this court followed by a new ground of denial by the PTO.

I would, therefore, address on the merits the new ground for denying registration raised by the PTO, which is "lack of ownership" by the appellant. There is no assertion by appellant that the PTO's denial of registration on that basis was not made in accord with proper procedure or is otherwise unfair. Indeed, appellant conceded at oral argument that the PTO had the authority to use that basis of denial, even after the earlier opinion of this court.

On the merits, the PTO determined that Wella U.S., a subsidiary of Wella A.G., is the owner of the WELLASTRATE mark sought to be registered and that only the owner may register a trademark. 15 U.S. C. § 1051 (1982). This finding of the PTO, however, is clearly erroneous.

The Board based its finding that Wella A.G. does not own the mark on the fact that Wella U.S. had previously registered four separate marks in the Wella family. The Board referred to 15 U.S.C. § 1057(b), which states:

> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

Although the Board may have been correct in drawing a presumption based on that section and the ownership by Wella U.S. of its four registered marks that it and not Wella, A.G. owned the mark at issue, I believe it is clear that this presumption was overcome by the declaration of Wella, A.G., supported by the foreign registration, that it owned a fifth mark—WELLASTRATE— at issue here.

Included in Wella A.G.'s application for registration of WELLASTRATE is a declaration by the President of Wella A.G. that he "believes said corporation to be the owner of the trademark sought to be registered." Also included is a copy of the 1958 registration of the same mark by Wella A.G. in the Federal Republic of Germany. No evidence was presented by the PTO to contradict that evidence of ownership by Wella A.G.

For the foregoing reasons, the Board's rejection on the basis of "lack of ownership" should be reversed.